# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 02-2253, 02-2254, 02-2465, 02-3091 & 02-3625

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM HANHARDT, JOSEPH BASINSKI,
GUY S. ALTOBELLO, and WILLIAM R. BROWN,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 853—**Charles R. Norgle Sr.**, *Judge.*

ARGUED SEPTEMBER 5, 2003—DECIDED MARCH 16, 2004

Before BAUER, POSNER, and DIANE P. WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* William Hanhardt, Joseph Basinski, Sam DeStefano, Paul Schiro, and Guy Altobello were indicted for one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). In a second count, Hanhardt, Basinski, Schiro, and William Brown were charged with conspiracy to transport stolen property in interstate commerce in violation of 18 U.S.C. § 371. The indictment also contained a forfeiture allegation seeking forfeiture of $4,845,000, miscellaneous jewelry,

gems and watches, and certain real estate of Hanhardt and
DeStefano. All of the defendants pleaded guilty and were
sentenced to imprisonment for periods ranging from 25
months to 188 months. There are several issues raised on
appeal relating to the sentencing decisions of the district
court.[1] We affirm in part, reverse in part, and remand for
new sentencing consistent with this opinion.

## BACKGROUND

*Count One*

Between 1980 and April 1998, William Hanhardt, Joseph
Basinski, Paul Schiro, Sam DeStefano, and Guy Altobello
engaged in an organized nationwide scheme to identify and
target for theft more than 100 jewelry salespersons travel-
ing in interstate commerce with lines of jewelry valued in
excess of $40 million. Throughout this period, the conspira-
tors committed at least nine jewelry thefts totaling more
than $5 million in at least seven states, including Arizona,
California, Michigan, Ohio, Texas and Wisconsin.

Hanhardt, the leader of the enterprise, supervised
Basinski and together they directed the activities of the
other conspirators. Hanhardt directed in the gathering of
information regarding potential jewelry theft targets and in
the surveillance of such individuals to determine the best
time and place to steal jewelry from cars and hotels. He also
used Chicago police officers to run searches on law enforce-
ment computers to find information about jewelry salesper-
sons. He also had a private investigator gather personal
information on targets. Hanhardt retired from the Chicago
Police Department in 1986. However, while he was a sworn

---

[1]  The district court properly used the 1997 version of the Federal
Sentencing Guidelines and therefore citations in this opinion refer
to that version.

officer, Hanhardt committed at least one theft with Basinski and other conspirators; an October 8, 1984 theft of one hundred eighty Baume & Mercer watches valued at approximately $310,000 from Paul Lachterman in Glendale, Wisconsin.

Basinski identified potential targets by doing physical surveillance, making telephone calls and running database searches. He also recruited additional members for the organization and fenced stolen jewelry. Altobello provided other members with information about jewelry salespersons who conducted business with Altobello Jewelers, Inc., a Chicago area retail jewelry store, including, information regarding the identity of such persons, the nature and quality of their goods, and the most opportune time to steal from them.

*Count Two*

In October 1996, Brown joined Hanhardt, Basinski, and Schiro in a scheme to steal watches valued at $500,000 from Illinois jewelry salesman Paul Lachterman. They planned to steal the watches while Lachterman traveled through Wisconsin and Indiana and then to transport the stolen watches back to Illinois. Hanhardt and Basinski had already stolen from Lachterman in 1984 and decided to target him again. Between April and September of 1996, they stalked Lachterman, gathered more information on him and managed to make a duplicate key to the trunk of his car. Basinski contacted Schiro in Phoenix who drove to Chicago, bringing Brown with him, to assist in the theft. On October 1, 1996, the four conspirators followed Lachterman in two cars as he drove to Wisconsin and met with customers. On October 2, 1996, they followed him as he drove to Indiana. There, while Lachterman was in a restaurant, Basinski and the others used the duplicate key and stole a case of watches valued at $58,000, which had

been provided by the FBI. Realizing that the case contained only a fraction of the value they expected, the conspirators returned the case to the trunk.

Each of the defendants pleaded guilty to the charges and were sentenced to between 25 months and 188 months of imprisonment. They appeal these sentences.

## ANALYSIS

I.   Responsibility of Hanhardt and Basinski for the 1995 Armed Robbery of Esagh Kashimallak

Hanhardt and Basinski challenge the court's finding that they were responsible for the 1995 robbery. At the sentencing of both Hanhardt and Basinski, the government presented evidence that the conspiracy charged in the first count of the indictment had included the armed robbery of Esagh Kashimallak in 1995. Based on the facts of that incident, the government sought an enhancement for the physical restraint of a victim (§ 3A1.3) (2 levels) and an upward departure for use of a weapon in the commission of a crime (§ 5K2.6) (6 levels) and bodily injury to a victim (§ 2B3.1) (2 levels). CGV16; Tr4/29/02//60-659;5/2/02//719-21; Tr5/6/02//12.34. After hearing sworn testimony from the victim and FBI Special Agent Edward McNamara, the district court judge found by a preponderance of the evidence that Hanhardt was responsible for the armed robbery. Tr5/1/02//667. However, the court declined to impose either the upward departure or the enhancement and sentenced Hanhardt to the high end of the guideline range (151-188 months). Tr5/2/02//725-26. A week later, the court found Basinski also responsible for the 1995 armed robbery and sentenced him to the high end of the guideline range (87-108 months), declining to impose the upward departure or the enhancement. Tr5/6/02//37, 58-66. The court did not

specifically attribute the high end sentence to the finding that Hanhardt and Basinski were responsible for the armed robbery. *Id.*

The district court's findings that Hanhardt and Basinski were responsible for armed robbery of Kashimallak is a factual finding reviewed for clear error. *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir. 1990). The court's finding that Kashimallak and the FBI agent were credible is entitled to due deference. *Id*; U.S.C. § 3742(d). The court did not increase either defendant's offense level and there is no indication in the record that the court's finding of responsibility had any bearing on its decision to sentence them at the high end of the applicable guideline range.

Where a defendant does not request specific findings pursuant to 18 U.S.C § 3553(c) at the time of sentencing, this court has held that the issue is waived. *United States v. Caicedo*, 937 F.2d 1227, 1236 (7th Cir. 1991); *United States v. Burns*, 128 F.3d 553, 556 (7th Cir. 1997). In this case, the defendants had the opportunity to ask the court to make clarifications and did not. Therefore, the district court's ruling on this issue will not be disturbed.

II. Increased Offense Levels Based on Obstruction of Justice for Hanhardt and Altobello

The court sentenced both Hanhardt and Altobello to a higher offense level based on a determination that both obstructed justice. This court reviews the district court's application of sentencing guidelines de novo. *United States v. Williams*, 272 F.3d 845, 864 (7th Cir. 2001). The sentencing court's determination that a defendant has obstructed justice is a finding of fact to be reviewed under the clearly erroneous standard. *United States v. Teta*, 918 F.2d 1329, 1332 (7th Cir. 1990); *United States v. Jackson*, 935 F.2d 832, 849 (7th Cir. 1991). We find that the obstruction of justice enhancements applied to both Hanhardt and Altobello were clearly erroneous.

A.  Hanhardt

Hanhardt's trial was set only a few weeks after he had undergone testicular cancer surgery, for October 16, 2001. On that morning, his counsel asked for a continuance because of his client's inability to be in court. It later came to light that the defendant had attempted suicide by drug overdose and was in the hospital. Based on that information, the court found that Hanhardt was responsible for his failure to appear in court as required by his bond. The court issued an arrest warrant, staying it until October 20, 2001, when the defendant was due in court. If Hanhardt did not show up on the 20th then the warrant was to have been executed.

On October 18, 2001, the parties returned to court on the government's emergency motion to inform the court that Hanhardt had made arrangements to be admitted to an in-patient program at another hospital. The new hospital required him to stay five to ten days which would cause him to miss his scheduled day in court. The government argued that Hanhardt was intentionally arranging to violate the court's order to be in court on the 20th. The court ordered the execution of the warrant and set a trial date for the 25th of October.

At that time, the court stated:

> The court also notes that Hanhardt apparently had no intention of appearing in court on October 20th, as he was planning to be hospitalized as part of an inpatient mental health treatment program. This anticipated non-appearance causes the court to order immediate execution of the arrest warrant to ensure Hanhardt's appearance.

R239//6.

At sentencing, the court imposed a two-level enhancement of Hanhardt's offense level for obstruction of justice under

U.S.S.G. § 3C1.1. The court based the enhancement on its finding that Hanhardt acted willfully and with the specific intent not to be present in court as ordered both on October 16 and October 20 and that he had the intent to impede the prosecution of his case. The court stated:

> He voluntarily, knowingly, and with reckless disregard placed controlled substances into his own body. That he may have taken more than prescribed was his own decision. He did it alone. It was a voluntary act on his part. He caused the result. It was his intention then not to be in the courtroom to enter his plea of guilty or to appear for trial. That he may have other reasons in addition to those for doing what he did is not of major consequence.

Tr4/29/02//50-60. The court found authority for its ruling in the Federal Sentencing Guidelines. Section 3C1.1 of the guideline states: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the adminis-tration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1.

We find that the court's decision to impose an obstruction of justice enhancement based on Hanhardt's attempted suicide to be clearly erroneous. "A finding of fact is clearly erroneous only if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. McGill*, 32 F.3d 1138, 1143 (7th Cir.1994);[2] *quoting United States v. Beal*, 960

---

[2] Evidence that the defendant was found in his cell standing on top of the toilet with his head protruding through a hole in ceiling tiles supported an enhancement of sentence for two levels for obstruction of justice; we held the trial court's conclusion that defendant was attempting to escape rather than attempting sui-

(continued...)

F.2d 629, 632 (7th Cir.), *cert. denied*, 506 U.S. 880 (1992). After reviewing all the evidence, we believe that a mistake has been made in this case.

We do not believe that an attempted suicide can be considered an obstruction of justice. In the *United States v. McGill*, we affirmed an enhancement because the district court had determined that the defendant had tried to escape rather than commit suicide, a finding that was not erroneous. 32 F.3d at 1143. Implicit in that decision is the understanding that suicide would not be an obstruction. *Id.*

The defendant argues that Hanhardt's attempted suicide reflects his specific intent to *die*, rather than his intent not to appear in court the following day. The U.S. Probation Officer explained that:

> If the defendant's intention was solely to miss the court hearing, he could have simply failed to appear or even fled from this district. In this case, the defendant chose a more drastic and potentially fatal action. It is therefore the assessment of the undersigned that the defendant's legitimate, albeit wilfull, attempt to commit suicide transcends the desire to miss a court hearing. . . .

(HBr 31) (R362-17 at 48; R306 at 16). The nature of suicide does not lend itself to a clear understanding of an individual's motivation other than the obvious intent to end his life. We agree with U.S. Probation's characterization of the defendant's actions and reverse the district court's decision to enhance his sentence based on an obstruction of justice.

---

(...continued)

cide was not clearly erroneous. *United States v. McGill*, 32 F.3d 1138 (7th Cir. 1994).

B.  Altobello

At sentencing, the court applied a two-level increase to Altobello's sentence based on an obstruction of justice enhancement provided for in U.S.S.G § 3C1.1. The obstruction of justice sentencing guideline at issue provides:

> If the defendant willfully obstructed justice or impeded, or attempted to obstruct or impede, the administration of justice during the course of an investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (1997). The government sought this enhancement based on unsworn false statements Altobello made to law enforcement officers in 1998.

On March 10, 1998, Altobello was confronted by FBI agents. After hearing a tape-recording of an intercepted conversation, Altobello admitted that his voice was on the tape, that he had done a "bad thing." FBI 3.02, GSSS, Ex.C. (report summarizing FBI interview with Altobello). However, at that time, Altobello did not admit committing any other crime and denied criminal associations with certain individuals.

Because information regarding the extent of Altobello's involvement later contradicted his unsworn statements, the district court determined that Altobello had impeded the investigation and therefore obstructed justice. We disagree and vacate the enhancement.

The district court judge believed that "there must be some consequence to what Altobello said or failed to say" when confronted by the FBI agents in 1998. Tr. 62; App. 18. This court has held that "the obstruction of justice enhancement does not apply to any and all obstructive conduct that a defendant may have attempted or committed." *United States v. Polland*, 994 F.2d 1262, 1269 (7th Cir. 1993). There is not a presumption in favor of an obstruction

enhancement when a defendant makes unsworn, out-of-court false statements to law enforcement officers. In fact, Note 4(b)[3] states that "making false statements, not under oath, to law enforcement officers" is included in the "list of examples of the types of conduct that, absent a separate count of conviction for such conduct, do *not* warrant application of this enhancement, but ordinarily can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range." U.S.S.G. § 3C1.1, Application Note 4(b) (emphasis added). However, if the defendant's false statement "significantly obstructed or impeded the official investigation or prosecution," the obstruction enhancement may be imposed. U.S.S.G. § 3C1.1, Application Note 3 (1997).[4]

Significant and actual obstruction or impediment must be shown by the government. *See United States v. Shriver*, 967 F.2d 572, 575 (11th Cir. 1992). The government failed to establish that Altobello's unsworn statements significantly impeded its investigation. The government only offered the conclusory claim that Altobello's statements "significantly obstructed or impeded the official investigation of Basinski, Hanhardt and the co-conspirators." (Government's Consolidated Version of Offense (CGV) 36-37). This was an insufficient basis for an obstruction increase. *See United States v. Jackson*, 935 F.2d 832, 850 (7th Cir. 1991) ("the government's brief statement that it 'expended resources . . . only to find out that Gines' information was misleading' does not itself suffice to establish that Gines hampered the investigation in any significant way").

---

[3] Application note (4)(b) in the 1997 version of § 3B1.1 of the Federal Guidelines is identical to note (5)(b) in the 2003 version.

[4] Application Note 3 is identical to Application Note 4 in the 2003 version of the guidelines.

In the government's supplemental sentencing submission, it essentially relies on the *potential* for Altobello's statements to have impeded the investigation, rather than evidence of actual impediment or hindrance. No government agents testified at Altobello's sentencing or otherwise say that his statements resulted in significant and actual investigative impediment. Consequently, we vacate the obstruction of justice enhancement from Altobello's sentence.

## III. District Court's Denial of Downward Adjustments for Acceptance of Responsibility for Hanhardt and Altobello

At sentencing the court denied downward adjustments for acceptance of responsibility for both Hanhardt and Altobello. We review the district court's finding as to whether a defendant has accepted responsibility for his criminal activity for clear error. *United States v. Taliaferro*, 211 F.3d 412, 414 (7th Cir. 2000). Whether a defendant has accepted responsibility is a "context-specific" inquiry. *United States v. Frykholm*, 267 F.3d 604, 610 (7th Cir. 2001); *quoting United States v. Branch*, 195 F.3d 928, 937 (7th Cir. 1999). Upon review, the determination of the sentencing judge is entitled to great deference. U.S.S.G. § 3E1.1, Application Note 5. Absent an abuse of discretion, we will not disturb a sentencing judge's decision. *United States v. Lange*, 312 F.3d 263 (7th Cir. 2002). We find the district court did not abuse its discretion in this instance and affirm the denial of acceptance of responsibility points.

### A. Hanhardt

Hanhardt entered a blind plea to the indictment on October 25, 2001, nine days after the case was scheduled to begin trial. He was the last of the five defendants then before the court to enter a guilty plea. His lawyer read a one and a half page statement to the court that admitted to

the elements of the offense. After the government detailed the evidence that would have been presented against him, Hanhardt responded, "I don't agree with everything he (Assistant United States Attorney Scully) said." Tr10/25/01//41. When the court asked Hanhardt whether he was pleading guilty to Count One as alleged in the indictment, Hanhardt responded, "In its entirety, no, sir." *Id.*

Section 3E1.1 of the sentencing guidelines is designed to award a defendant who demonstrates contrition through an honest and full account of his offense conduct. *United States v. Larkin*, 171 F.3d 556, 559 n. 4 (7th Cir. 1999). The sentencing court can require that the defendant provide a candid and full explanation of the circumstances surrounding the offense of conviction. *United States v. Hammick*, 36 F.3d 594, 600-01 (7th Cir. 1994).

In addition, the act of pleading guilty does not automatically entitle a defendant to the reduction. *Id.*; U.S.S.G. § 3E1.1, Application Note 3. The sentencing judge is also required to look beyond "formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of personal responsibility for his offense in a moral sense." *Id.* at 601; *see also United States v. Beserra*, 967 F.2d 254, 256 (7th Cir. 1992). Based on the foregoing, we affirm the district court's decision to deny Hanhardt's downward departure for acceptance of responsibility.

B. Altobello

Altobello was denied a downward adjustment for acceptance of responsibility because he falsely denied the extent of his involvement in the theft conspiracy. Tr5/28/02//60-68. On September 26, 2001, Altobello pleaded guilty, admitting that his role in the enterprise was to provide information

about traveling jewelry salespersons who came to his son's retail jewelry store, Altobello's Jewelers, Inc. Tr9/26/01//14-17. He admitted that the information he provided to Basinski included salespersons' names, the kind of merchandise they were carrying, the types of vehicles they were driving and the license plate for those vehicles, and how often they came to the store. *Id*. He also claimed that he had provided such information only on three salespersons in 1996, a period in which the government had substantial evidence including a recorded telephone conversation between Altobello and Basinski and telephone records showing substantial contact with Basinski. In other words, Altobello admitted only to that which was impossible to deny. The court believed the government's argument that Altobello had been in contact with the conspirators since 1993, offering information for the first Kashimallak robbery.

The district court judge denied Altobello's downward departure for acceptance of responsibility because he did not believe that he was truthful about the extent of his involvement in the conspiracy. There is no indication of an abuse of discretion, so we affirm the district court's denial of acceptance of responsibility.

IV. Two-Level Enhancement as to Hanhardt, Basinski, and Altobello for Theft from the Person of Another

Under 18 U.S.C § 3742(e), a court of appeals reviewing a sentence imposed under the sentencing guidelines shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts. *United States v. Mallon*, 345 F.3d 943, 945 (7th Cir. 2003).

The district court enhanced the defendants' sentences pursuant to § 2B1.1(b)(2) based on evidence of the circumstances surrounding two separate thefts. On June 30, 1992,

Melvin Draftz, a traveling jewelry salesman was distracted by a bump from behind. Shortly after, he realized his briefcase, containing his $1.3 million jewelry line, was gone from the floor by his side. On May 7, 1994, Roland Naftule was similarly victimized when he was bumped from behind causing his bag of jewelry to slip from his grasp and disappear.

A.  Factual Finding Regarding Theft from a Person.

The district court judge determined the facts warranted the theft of person enhancement provided for in § 2B1.1 of the sentencing guidelines. Theft from the person of another "means theft, without the use of force, of property that was *being held by another person or was within arms' reach*. Examples include pick-pocketing and non-forcible purse-snatching, such as the theft of a purse from a shopping cart." U.S.S.G. § 2B1.1, Application Note 1 (emphasis added).

Whether or not the victims' bags were *within arms' reach* is a factual determination and is reviewed for clear error. *See United States v. Mijangos*, 240 F.3d 601, 604 (7th Cir. 2001). We believe it is a reasonable determination, based on these facts, that the victims' bags were within their reach and so affirm the district court's finding.

B.  Application of the Enhancement to Altobello

In addition, Altobello challenges the court's application of this enhancement to him because he claims he was not part of these specific thefts. He argues that the court misapplied the principles of conspiracy law. At sentencing, the court stated:

> [It] was foreseeable that there would be theft from the person, and it was, therefore, foreseeable by Mr. Altobello that someone would take from the person of Naftule the jewelry that was contained in the bag that he had at arm's reach. He need not have known spe-

cifically the name of Mr. Naftule, but that other conspirators were personally robbing from the persons of others was clearly foreseeable to Mr. Altobello. And in fundamental Pinkerton conspiracy law, he is accountable.

Tr4/29/02//78.

Altobello persists that there was no evidence that he agreed to a theft from Naftule's person and therefore that theft was beyond the scope of his conspiratorial agreement. Altobello is incorrect. A defendant need not know of a coconspirator's actions for those actions to be reasonably foreseeable to the defendant. *United States v. Hernandez*, 325 F.3d 811, 817 (7th Cir. 2003). The court's finding that the circumstances of the Naftule theft were foreseeable to Altobello was not clearly erroneous and so to apply the enhancement to Altobello was not an abuse of discretion.

V.   Organized Crime Upward Departure for Basinski, Altobello, and Brown

We review the district court's application of sentencing departures de novo, but factual findings are reviewed for clear error. 18 U.S.C. § 3742(e); *Mallon*, 345 F.3d at 946.

A.  Background

It has long been understood that organized crime derives much of its power through illegal endeavors, including the theft and fencing of property. *United States v. Turkette*, 452 U.S. 576, 588 (1981). The Chicago Outfit (hereinafter the "Outfit") is one of the organized criminal enterprises in the United States. *United States v. Rainmone*, 32 F.3d 1203, 1209 (7th Cir. 1994). The Outfit "is the clearest example of a gang operating on such a scale, with such success, over such a long period of time that the danger it poses to society is not adequately reflected in the guideline range." *Id.*

The Outfit operates through "street crews," *United States v. Salerno*, 108 F.3d 730, 733 (7th Cir. 1997); *United States v. DiDomenico*, 78 F.3d 294, 297-98 (7th Cir. 1996), and several of the conspirators in this case, including all three of the defendants who challenge the organized crime upward departure on appeal, were members of the Ogden/ Grand Avenue crew controlled by Joseph Lombardo.

Information from confidential informants identified Basinski and Brown, along with Schiro and D'Antonio, as members of Joseph Lombardo's Grand Avenue Crew of the Chicago Outfit and described that group as an organized crime jewelry theft crew that worked closely with Hanhardt. CGV 45-52. A witness and an informant identified Altobello as a jewelry fence for organized crime. CGV39, 53.

Hanhardt stipulated at sentencing that as to the RICO conspiracy and the jewelry theft conspiracy, the conspirators used organized crime connections in the commission of the crimes. DeStefano agreed in his written plea agreement to a two-level enhancement because organized crime connections were used in the commission of the RICO offenses. Tr55/1/02//640-46. Schiro is not appealing that finding. The court found an organized crime connection for which Basinski, Altobello, and Brown received a two-level upward departure. Tr/5/6/02//21, 26; 5/28/02//166-67; 7/31/02//41-42.

Where membership in or association with the Outfit is used to further the criminal activity for which a defendant is convicted, an upward departure under the guidelines is appropriate. *United States v. Zizzo*, 120 F.3d 1338, 1361 (7th Cir. 1997); *United States v. Scheihs*, 971 F.2d 1302, 1316-17 (7th Cir. 1992).

The defendants dispute their connection or membership with organized crime and argue that the unsworn statements of informants, the identity of whom has not been

disclosed by the government, cannot provide a sustainable basis for an upward departure. We disagree. Due Process does not prohibit the use at sentencing of out-of-court declarations by unidentified informants where those statements are supported by sufficient corroboration. *United States v. Fatico*, 579 F.2d 707, 713 (7th Cir. 1978). The Hanhardt stipulation, DeStefano's agreement, the crimes, and the participants in them, all corroborated the informants. *Id.* By all this evidence, it is more likely than not that the conspirators are participants in organized crime. *Id.* Therefore, we affirm the upward departure for connection to organized crime as to Basinski, Altobello, and Brown.

## VI. Basinski's Role as a Leader and an Organizer

At sentencing the district court judge added a four-level adjustment to Basinski's sentence based on his role in the conspiracy. Guideline § 3B1.1(a) permits this adjustment if the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G § 3B1.1. Whether Basinski was a leader in the conspiracy for purposes of § 3B1.1 is a question of fact which we review for clear error. *United States v. Vivit*, 214 F.3d 908, 922 (7th Cir. 2000).

To be classified as an organizer or leader, a defendant "may simply have organized or in some way directed" another member of the conspiracy. *United States v. Mustread*, 42 F.3d 1097, 1104 (7th Cir. 1994). The upward adjustment is applicable to each leader in a conspiracy and more than one conspirator may qualify as an organizer or a leader. *United States v. McClinton*, 135 F.3d 1178, 1191 (7th Cir. 1998). *See* U.S.S.G § 3B1.1(a), Application Note 4.

The wiretap that intercepted the conversations of Hanhardt and Basinski showed that both exercised decision-making authority. The two organized and planned the

identification and stalking of jewelry salespersons and the theft and sale of jewelry. Basinski recruited and supervised knowing accomplices and unknowing participants to assist in the theft of jewelry and the sale of stolen jewelry. In dozens of recorded conversations, Hanhardt and Basinski decided whom to target in addition to planning and organizing the commission of the thefts.

Basinski insists that the district court rejected the three-level enhancement determined by the probation officer, made no findings to support its conclusion, and reached its conclusion based upon only a brief statement by the government at sentencing. We disagree. The record is clear that the court relied on the entire record in reaching its decision. The court stated:

> It may well be that Mr. Hanhardt was the ultimate leader, but clearly he and Mr. Basinski were simultaneously the leader[s] and organizers of the conspiracy. And in making this determination the Court has considered the 165-page Santiago proffer, as well as the information in support of the Title III tapes. And the Court has considered the plea agreements of certain defendants, as well as, indeed, the blind plea of Mr. Hanhardt to Count 1 and Count 2. As the Court has examined all these submissions, including the submissions of Mr. Basinski himself, it is clear that both he and Hanhardt were leaders and organizers of the conspiracy.

Tr5/06/02//12-13. It is clear that the district court considered the entire record before deciding. The district court's conclusion that Basinski was a leader and an organizer is supported by the record and therefore not clearly erroneous.

VII.   Denial of a Downward Adjustment for Minor Role for
       Altobello

Altobello was denied a two-level downward adjustment
for minor participation pursuant to § 3B1.2(b) of the
guidelines. A district court's decision to deny a defendant a
downward adjustment for mitigating role in criminal
activity under § 3B1.2 is a factual determination that is
reviewed for clear error. *E.g.*, *Schetz v. United States*, 901
F.2d 85, 87 (7th Cir. 1990).

According to § 3B1.2(b), if the sentencing court finds that
the defendant was a "minor participant" in the offense, his
sentence may be decreased by two levels. *United States v.
Corral*, 324 F.3d 866, 874 (7th Cir. 2003). We have often
held that a minor participant is "one who is substantially
less culpable than the other participants." *Id.*; *United States
v. Jones*, 55 F.3d 289, 293 (7th Cir. 1995). However, we
make this determination by examining "whether the
defendant was a minor participant in the crime for which he
was convicted, not whether he was a minor participant in
some broader conspiracy that may have surrounded it." *Id.*;
*quoting United States v. Brown*, 136 F.3d 1176, 1185-86
(7th Cir. 1998). Though we apply this reduction infre-
quently, a defendant who seeks it must establish by a
preponderance of the evidence that he is entitled to it.
*United States v. Soto*, 48 F.3d 1415, 1423 (7th Cir. 1995);
*Corral*, 324 F.3d at 874.

In this case, the district court found that Altobello played
an instrumental role in the offense by providing information
to the other conspirators that enabled them to target the
victims he identified. The principle means by which the
conspirators identified their victims was by gaining access
to industry trade shows and surveilling the traveling
wholesale jewelers who attended those shows. Altobello was
a significant source of information about salespersons who
came to Altobello Jewelers, Inc. He provided information

about at least five salespersons who carried with them in excess of $2 million in jewelry and precious stones. In addition to identifying salespersons, Altobello provided information about the type and quality of merchandise they carried and how it was transported, their schedules, the vehicle license plates, and the type of vehicles they drove. The district court found that Altobello identified victims and provided crucial information about them to the other conspirators, making him an important and a significant contributor to the conspiracy.

Altobello's argument that he is significantly less culpable than the others because he did not participate in *all* of the conspiratorial activity is not enough to meet his burden. The district court's finding as to Altobello's role in the conspiracy is reasonable and not clearly erroneous. Therefore, we affirm the denial of a downward adjustment for a minor role for Altobello.

The district court's determination that Altobello joined the conspiracy at least as early as the 1993 robbery of Kashimallak and that all thefts from that point were reasonably foreseeable to him is reviewed for clear error. *United States v. Zarnes*, 33 F.3d 1454, 1474-75 (7th Cir. 1995). Based on all the evidence that was before the district court, including circumstantial evidence of his involvement in the 1995 Kashimallak theft and robbery, the district court correctly determined that the evidence of Altobello's words and actions showed that he was a member of the conspiracy from at least 1993 and that he demonstrated a degree of commitment to the objectives of the conspiracy that made all thefts from 1993 reasonably foreseeable to him. Tr5/28/02//77-81, 86-87. The finding is not clearly erroneous and is affirmed.

Based on the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for new sentencing consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*