FILED
United States Court of Appeals
Tenth Circuit

October 17, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ORLANDO KEANE JORDAN, also
known as Rodeo, also known as
Cowboy, also known as Orlando Kiane
Jordan,

Defendant - Appellant.

No. 14-5017
N.D. Oklahoma
(D.C. No. 4:12-CR-00199-CVE-6)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Defendant and Appellant, Orlando Keane Jordan, appeals the 210-month sentence imposed on him following his plea of guilty to one count of conspiracy to possess with intent to distribute and to distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii). For the following reason, we affirm that sentence.

## BACKGROUND

Mr. Jordan's guilty plea stemmed from his involvement in a long-running drug conspiracy that distributed methamphetamine and marijuana throughout northern Oklahoma. The illegal drugs were smuggled in from Mexico and transported to Oklahoma from Texas, California and Arizona. The organization had a hierarchical structure, with two individuals (Moises Alberto Yanez and Oscar Fuentes-Diaz) directing and organizing the concerted activities of various distributors, transporters, runners, couriers, collectors/enforcers and street-level dealers. Messrs. Yanez and Fuentes-Diaz operated at the center of the conspiracy, maintaining the supply conduits, setting prices, recruiting participants, and claiming the largest share of the profits. Armed enforcers were used within the organization to threaten and intimidate witnesses and collect drug debts. The Yanez drug trafficking organization was capable of importing, transporting, and disseminating multiple kilogram quantities of methamphetamine and marijuana into the Tulsa, Oklahoma, area on a weekly basis.

Mr. Jordan met Mr. Yanez in early 2009, and began selling marijuana for the Yanez drug trafficking organization in April 2009. Mr. Yanez delivered marijuana to Mr. Jordan in person or through various couriers, including Jason Slape, Chastity Slape, and Maicol Nunez-Guardado. On average, Mr. Jordan received marijuana once a month. He often was "fronted" the marijuana, and would pay Mr. Yanez for the shipment once he had sold it. Mr. Jordan continued to sell marijuana for the Yanez drug conspiracy until it collapsed in November 2012. The district court conservatively estimated that Mr. Jordan possessed with intent to distribute, and actually distributed, over 1,000 kilograms of marijuana.

Besides selling marijuana, Mr. Jordan was also used by Mr. Yanez to intimidate other members of the conspiracy and to dissuade them from cooperating with law enforcement. There was testimony that in 2011, after Jason Slape was incarcerated, Mr. Yanez sent Mr. Jordan to the home of Jason Slape's wife, Chastity Slape. Mr. Jordan confronted Ms. Slape, held a gun to her head and told her that if she or her husband talked to law enforcement, he would kill Jason Slape's family. Mr. Jordan was also sent to threaten Amanda Sweeney, Jason Slape's sister. Mr. Jordan went to the Sweeney residence and made threats to her and her family, warning her that she and her brother should not talk to the police.

When legal authorities discovered the existence of the conspiracy, Mr. Jordan, along with others, was ultimately charged by indictment with conspiracy

to possess with intent to distribute, and to distribute, more than 1,000 kilograms of marijuana. He pled guilty on October 18, 2013, pursuant to a plea agreement. In exchange for Mr. Jordan's guilty plea, the government agreed to recommend a two-level reduction in his advisory sentencing range under the United States Sentencing Commission, Guidelines Manual, ("USSG") § 3E1.1(a) for acceptance of responsibility, and to file a motion for an additional one-level reduction pursuant to USSG § 3E1.1(b), for assistance to the government.

During the change-of-plea colloquy, Mr. Jordan admitted his guilt and acknowledged that he was facing a sentencing range from the statutory minimum of ten years, up to a possible life sentence. He also indicated his understanding of the role of the Guidelines in the selection of his sentence.

In preparation for Mr. Jordan's sentencing, the United States Probation Office prepared a presentence report ("PSR"). The PSR calculated Mr. Jordan's base offense level as 32, based upon the quantity of marijuana involved. It applied a two-level enhancement under USSG § 2D1.1(b)(1) because Mr. Jordan used a firearm to intimidate other members of the drug trafficking conspiracy and prevent them from providing information about the organization to law enforcement authorities. The PSR also recommended a two-level increase for obstruction of justice under USSG § 3C1.1, because Mr. Jordan had threatened Chastity Slape and Amanda Sweeney with violence if either of them cooperated with the police. The PSR then denied Mr. Jordan a reduction in his offense level

for acceptance of responsibility, leading to a total offense level of 36. With a criminal history category of VI, based on Mr. Jordan's extensive criminal history, the PSR calculated his advisory Guidelines sentencing range as 324 to 405 months' imprisonment.

Mr. Jordan filed multiple objections to the PSR. He objected to the enhancement for obstruction of justice by threatening or intimidating Ms. Slape and/or Ms. Sweeney, and he objected to the firearm enhancement. The Probation Office declined to revise the PSR.

Mr. Jordan also filed multiple sentencing memoranda prior to his sentencing. He included numerous supportive letters from friends and family, as well as a fourteen-page handwritten allocution asking the court for leniency. Mr. Jordan filed a final amended sentencing memorandum, in which he argued that his history and characteristics support a more lenient sentence, claiming that he should receive an acceptance of responsibility reduction and asserting that the evidence would not support the obstruction and firearm enhancements.

Mr. Jordan also filed a motion for a variance or non-Guideline sentence, requesting that the court sentence him to the mandatory minimum 120-month term of imprisonment. He argued that he was a "middle man" with no supervisory or price-setting responsibility; that he had not used a weapon during the commission of the offense; that he had cooperated with the investigation and prosecution of

the case; that he was deeply devoted to his fourteen children; and that he was known for his charitable contributions and his volunteer efforts.

At his sentencing hearing, Mr. Jordan withdrew two objections, but stood by his objections that he did not obstruct justice or threaten Chastity Slape or Ms. Sweeney with a firearm. The government then called Ms. Slape to testify; she stated that she and her husband, Jason, had acted as "mules", transporting drugs for Mr. Yanez. She further testified that they had delivered marijuana to Mr. Jordan, who they knew as "Rodeo" or "Kiki."

Ms. Slape then described an episode that took place in April or May of 2011. She stated she came home to find Mr. Jordan and two other men standing in her living room. She testified that Mr. Jordan held a gun to her head and told her to tell her husband, Jason, not to talk to or cooperate with legal authorities, or else her family would be harmed. Ms. Slape said she cried and told Mr. Jordan she would relay the message to Jason; the men then left.[1]

Next, Mr. Fuentes-Diaz testified that, following his arrest, he learned that Ms. Slape had stated that she had been assaulted in her apartment by Mr. Jordan. When Mr. Fuentes-Diaz asked Mr. Yanez if he was involved in that, Mr. Yanez replied that he did not know about it at the time. Mr. Fuentes-Diaz indicated that

---

[1]Ms. Slape subsequently became a confidential informant for federal agents. She later had a phone conversation with Mr. Yanez in which he apologized for sending Mr. Jordan to her house, and explained that he had not intended to hurt her, but was just trying to send a message to Jason Slape.

he was subsequently present when Jason Slape was talking to Mr. Yanez about what had happened to Ms. Slape and also when Mr. Yanez paid Mr. Jordan $2000.

Mr. Jordan himself testified at his sentencing, stating that he did not know Ms. Slape but acknowledging a prior sexual relationship with Amanda Sweeney. While admitting that he went to Ms. Sweeney's house at one time with other individuals, he reiterated that he had consistently denied the assault on Ms. Slape and had asked for a polygraph on that matter. The district court noted for the record that Mr. Jordan had expressed surprise to a cellmate that the polygraph indicated that Mr. Jordan was being deceptive when denying the assault. Mr. Jordan claimed not to even know where Ms. Slape lived.

After hearing the above testimony, the district court ruled on Mr. Jordan's objections. The court stated that "[b]ased on the evidence and the testimony presented by the government, . . . [Mr. Jordan] directly intimidated both Chastity Slape and Amanda Sweeney . . . to prevent their cooperation with the government as well as to prevent the cooperation of Jason Slape." Tr. of Sentencing Hr'g at 82; R. Vol. III at 82. The district court therefore overruled Mr. Jordan's objection to the obstruction of justice enhancement.

The court then found "[b]ased on the evidence and testimony presented by the government," that "a firearm was present and was used to threaten and intimidate witnesses and criminal participants in the drug-trafficking

organization's distribution activities." Id. at 83. It thus overruled Mr. Jordan's objection to the firearm enhancement.

Finally, the court found that "through his objections, arguments, assertions and testimony the defendant ha[d] falsely and frivolously denied relevant conduct which the court has found and determined to be true and has acted in a manner inconsistent with acceptance of responsibility." Id. As a result, the court denied Mr. Jordan the two-level reduction for acceptance of responsibility.

In explaining its selection of a sentence, the district court explicitly stated that it had "reviewed and read every page of" Mr. Jordan's objections, sentencing memoranda, attachments and letters which had been submitted in support of a more lenient sentence. Id. at 84, 86. The court noted it had "taken those into consideration in arriving at a sentence in this case." Id. at 84. The court also expressly stated that it would consider the sentencing factors set out in 18 U.S.C. § 3553(a).

The court then determined that "the two-level enhancement for defendant possessing a firearm" punished the same conduct as the two-level enhancement for obstruction. Id. at 89. It thus varied downward two levels and then varied downward two additional levels "to avoid sentencing disparities with the leader of the Yanez drug-trafficking organization." Id. These downward variances reduced Mr. Jordan's total offense level to 32, which led to an advisory Guideline sentencing range of 210 to 262 months. The court then imposed a 210-month

-8-

sentence, at the bottom end of the advisory Guideline sentencing range. This appeal followed, in which Mr. Jordan argues his sentence is procedurally and substantively unreasonable.

## DISCUSSION

"[W]e review sentences for reasonableness under a deferential abuse-of-discretion standard." United States v. Adams, 751 F.3d 1175, 1181 (10th Cir.) (quoting United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008)), cert. denied, 2014 WL 4054222 (Oct. 6, 2014) (No. 14-5787). "Reasonableness review" includes "a procedural and a substantive component." Id. "The procedural component concerns how the district court calculated and explained the sentence, whereas the substantive component concerns whether the length of the sentence is reasonable in light of the statutory factors under 18 U.S.C. § 3553(a)." Id.

In this case, as indicated, the district court varied downward from the advisory Guidelines sentencing range. District courts may "vary from the guidelines 'through application of the § 3553(a) factors.'" Id. (quoting Alapizco-Valenzuela, 546 F.3d at 1216). In those cases, "we simply consider whether the length of the sentence is substantively reasonable utilizing the abuse-of-discretion standard." Id.

**I. Procedural reasonableness:**

As indicated, Mr. Jordan first attacks the procedural reasonableness of his sentence, challenging the method by which a sentence was calculated. In determining whether the district court correctly calculated the recommended Guidelines range through application of the Guidelines, we review de novo the district court's legal conclusions and we review any factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam). "Under this [clear error] standard, we will not reverse the district court's finding unless, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Shengyang Zhou, 717 F.3d 1139, 1149 (10th Cir. 2013) (further quotation omitted). Mr. Jordan challenges the procedural reasonableness of his sentence by arguing the district court erred in applying the obstruction of justice and firearm enhancements. More specifically, as he claimed in his objections to the PSR, he denies that he threatened or intimidated Chastity Slape or Amanda Sweeney, or that he possessed or used a firearm during the course of the conspiracy to intimidate other conspiracy participants.

Mr. Jordan argues that the district court erred in concluding that the testimony of Ms. Slape and Ms. Sweeney was reliable, and in relying on that testimony to conclude that the government met its burden of proof to support the

challenged sentencing enhancements.  As the government points out, this argument ignores the deference we must afford to a district court's credibility determination.  "The credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze."  United States v. Hoyle, 751 F.3d 1167, 1175 (10th Cir. 2014) (quoting United States v. Deninno, 29 F.3d 572, 578 (10th Cir. 1994)).  That determination is reviewed for clear error, and "[w]e will not hold that testimony is, as a matter of law, incredible unless it is unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature."  United States v. Virgen-Chavarin, 350 F.3d 1122, 1134 (10th Cir. 2003) (further quotation omitted).  Thus, "the district court's credibility determination is virtually unreviewable on appeal."  Hoyle, 751 F.3d at 1175 (further quotation omitted).  We have reviewed the record in this case, and Mr. Jordan has come nowhere near meeting that high standard.

Mr. Jordan next argues that the government must show that his actions "materially hindered its investigation" to meet its burden for the obstruction of justice enhancement.  Appellant's Br. at 17 (citing United States v. Hanhardt, 361 F.3d 382, 390 (7th Cir. 2004)).  As the government notes in its brief, Hanhardt addressed a different type of obstruction–where a defendant makes "false statements, not under oath, to law enforcement officers."  Hanhardt, 361 F.3d at 389.  In that situation, Hanhardt correctly states that the Application Notes to

USSG § 3C1.1 require that the false statements "significantly obstruct or impede the official investigation or prosecution" in order for an obstruction enhancement to apply. Id. at 390 (citing USSG § 3C1.1, comment. (n. 3) (1997)) (now comment. (n.4(G) (2013)). Mr. Jordan's conduct was not of that nature. His obstructive conduct fell within Application Note 4(A), which provides that the obstruction enhancement may apply to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness . . . directly or indirectly, or attempting to do so." USSG § 3C1.1, comment. (n.4(A)). See United States v. Fleming, 667 F.3d 1098, 1107 (10th Cir. 2011) ("A defendant's offense level is enhanced by two levels for *attempted* obstruction of justice when the Government demonstrates that the defendant: (1) intended to obstruct justice, and (2) committed an act that constitutes a substantial step toward the obstruction of justice."). Hanhardt accordingly has no application to this case, and the district court correctly determined that the obstruction enhancement was applicable.

With respect to the firearm enhancement, Mr. Jordan argues there was insufficient evidence linking the possession of the firearm to the drug activity. See USSG § 2D1.1(b)(1), comment. (n. 11(A)) ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."). As the government points out, Mr. Jordan's own testimony at sentencing refutes this argument. Mr. Jordan testified that, when he went with others to Ms. Sweeney's house, at least someone had a gun for

"intimidation." Tr. of Sentencing Hr'g at 75; R. Vol. III at 75. And, even if the

district court did not conclude that Mr. Jordan himself had a weapon, a co-

defendant's possession of a weapon satisfies the firearm enhancement. See

United States v. Foy, 641 F.3d 455, 470 (10th Cir. 2011). Furthermore, Ms. Slape

testified that Mr. Jordan threatened her with a gun, and the district court found

that testimony credible. The district court accordingly correctly held that the

firearm enhancement was applicable.

Mr. Jordan next argues the district court clearly erred in refusing to grant

him a reduction in offense level for acceptance of responsibility. He claims that

the sole basis for that denial was the finding that he had falsely and frivolously

denied relevant conduct (with respect to the Slape and Sweeney allegations) at

sentencing. "The defendant bears the burden of proving acceptance of

responsibility." United States v. Lloyd, 13 F.3d 1450, 1453-54 (10th Cir. 1994).

"Whether the facts of a particular case warrant a reduction for acceptance of

responsibility is a question of fact that we review under the clearly erroneous

standard." United States v. Dazey, 403 F.3d 1147, 1172 (10th Cir. 2005). We

reject Mr. Jordan's argument on this point.

First, the commentary to the Guideline acceptance-of-responsibility

provisions states that "[c]onduct resulting in an enhancement under § 3C1.1

(Obstructing or Impeding the Administration of Justice) ordinarily indicates that

the defendant has not accepted responsibility for his criminal conduct." USSG

§ 3E1.1, comment. (n.4). Although "[t]he Guidelines do envision extraordinary cases where a defendant could receive an adjustment for acceptance of responsibility despite also receiving an enhancement for obstruction of justice," United States v. Hawthorne, 316 F.3d 1140, 1149 (10th Cir. 2003) (quoting United States v. Proffit, 304 F.3d 1001, 1009 (10th Cir. 2002)), Mr. Jordan demonstrates no such extraordinary circumstances here. Furthermore, as indicated above, we rejected Mr. Jordan's argument that the district court somehow erred in finding credible the testimony of Ms. Slape and Ms. Sweeney, and in finding that there was sufficient evidence supporting the obstruction enhancement. The court did not clearly err in denying an adjustment for acceptance of responsibility.

Mr. Jordan's next challenge to the procedural reasonableness of his sentence involves the claim that the court erred in considering polygraph evidence at sentencing. Mr. Jordan concedes he failed to raise this issue below, so review is for plain error only. See United States v. Rosales-Miranda, 755 F.3d 1253, 1257 (10th Cir. 2014).

> Under this demanding standard, [Mr. Jordan] must demonstrate: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

United States v. McGehee, 672 F.3d 860, 876 (10th Cir. 2012) (further quotation

omitted). Mr. Jordan fails to meet that rigorous standard. As the government

notes, the record contains no suggestion that the district court actually relied on

polygraph evidence in determining that Mr. Jordan had committed the obstructive

conduct and was properly sentenced with the firearm enhancement. And the

record contains ample evidence supporting the district court's findings and

conclusions, without regard to any evidence regarding the polygraph testing. No

plain error exists here.

## II. Substantive reasonableness:

Mr. Jordan argues his sentence is substantively unreasonable because it was

greater than necessary. He claims that the "nature and circumstances of this

offense and the history and characteristics of Mr. Jordan, taken in their entirety,

sufficiently outweighed and warranted a sentence lower than that called for under

the guidelines." Appellant's Op. Br. at 13. As indicated above, Mr. Jordan

moved for a downward variance, arguing that the mandatory statutory minimum

sentence of ten years was a sufficient sentence. The district court granted that

motion in part, reducing his total offense level by degrees.[2] We apply "a

'rebuttable presumption of reasonableness to a below-guideline sentence

---

[2]The court determined that the two-level enhancement for the possession of a firearm punished the same conduct as the two-level enhancement for obstruction. So, it varied downward two levels on that basis, and then varied downward two more levels to avoid sentencing disparities with the leader of the Yanez drug conspiracy. This totaled a four-level downward variance.

challenged by the defendant as unreasonably harsh.'" United States v. Ray, 704 F.3d 1307, 1317 (10th Cir. 2013) (quoting United States v. Balbin-Mesa, 643 F.3d 783, 788 (10th Cir. 2011)).

Mr. Jordan claims the district court failed to consider adequately his family situation, in light of the totality of the circumstances surrounding him and his offense of conviction. We have stated that we "may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them," but must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." United States v. Smart, 518 F.3d 800, 805, 808 (10th Cir. 2008). "We reverse only when the district court 'renders a judgment that is arbitrary, capricious, whimsical or manifestly unreasonable.'" United States v. Martinez, 610 F.3d 1216, 1227 (10th Cir. 2010) (quoting United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009)). The district court in this case clearly considered all the relevant sentencing factors, and indicated that it had considered all the materials submitted on Mr. Jordan's behalf. It was clearly aware of his family circumstances, yet determined that its downward variance to 210 months was sufficient. We cannot say that the court abused its discretion in this case.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence in this case.


ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge